# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DARIUS PICKETT,          )
                                       )

        Plaintiff,      )
                                       )     **No. 16 C 9241**

     v.                    )
                                       )     **Magistrate Judge Sidney I. Schenkier**

NANCY A. BERRYHILL, Acting    )
**Commissioner of Social Security,**[1]   )
                                       )

        Defendant.    )

## MEMORANDUM OPINION AND ORDER[2]

As a child, claimant Darius Pickett ("Mr. Pickett or "claimant") was found disabled and granted Supplemental Security Income benefits ("SSI") beginning July 9, 2007 (R. 336). When Mr. Pickett turned 18 years old in January 2013, his disability status was reevaluated as required by statute. 42 U.S.C. § 1382c(a)(3)(H)(iii). On March 6, 2013, the Acting Commissioner of the Social Security Administration ("SSA") determined that Mr. Pickett was no longer disabled as of March 1, 2013 (R. 337-41). On July 16, 2014, the Appeals Council affirmed this decision and Mr. Pickett subsequently requested a hearing (R. 364, 378). The hearing was held on July 22, 2015, before Administrative Law Judge ("ALJ") Michael Hellman, the same ALJ who had previously granted Mr. Pickett's application for childhood SSI benefits (R. 1127). On August 14, 2015, the ALJ issued an opinion finding Mr. Pickett not disabled; the Appeals Council affirmed

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2] On November 11, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 9).

the ALJ's decision, making it the final decision of the Commissioner (R. 1057, 1036). *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). This appeal followed.[3]

Mr. Pickett has filed a motion for reversal of the Commissioner's decision (doc. # 23), and a memorandum in support (doc. # 24). The Commissioner has filed a response to claimant's motion (doc. # 28), and Mr. Pickett has filed a reply (doc. # 32). Mr. Pickett argues that the ALJ's decision should be reversed for a number of reasons; we agree that one of them -- the ALJ's failure to obtain a valid waiver of counsel and subsequent failure to adequately develop the record -- warrants remand.

## I.

Mr. Pickett was originally adjudicated disabled as a child due to the severe impairments of learning disability, disruptive behavior disorder with aggression, asthma and obesity (R. 333). He attended an alternative junior high school because of his behavioral issues.[4] On October 6, 2011, Mr. Pickett underwent comprehensive testing that resulted in his being placed in special education classes in high school (R. 540-44). This testing revealed that Mr. Pickett had an overall IQ of 70, with scores in various reading and math abilities ranging from the 5th to the 18th percentile (*Id.*). Vincent Amdor, the school psychologist who administered the tests, noted that Mr. Pickett did not exhibit problems with concentration, attention or persistence (R. 541). In addition to recommending that Mr. Pickett be placed in special education classes, Dr. Amdor also recommended that Mr. Pickett's Individual Education Plan ("IEP") address his behavioral issues (R. 544).

---

[3] Mr. Pickett also filed for child's insurance benefits based on disability, pursuant to Section 223(d) of the Social Security Act; to be eligible for child's insurance benefits, a claimant must have a disability that began before age 22. The ALJ addressed this issue in his opinion and found that Mr. Pickett was not entitled to child's insurance benefits for the same reasons that he was not entitled to adult benefits (R. 1045-46).

[4] School records show that Mr. Pickett had a behavior plan in school because of difficulties controlling his temper, and that he often escalated minor annoyances by hitting, yelling or kicking (R. 540).

In March 2012, psychologist, Gregory Rudolph, Ph.D., performed a mental status evaluation on Mr. Pickett at the request of the Bureau of Developmental Disability Services ("BDDS"). Dr. Rudolph diagnosed Mr. Pickett with a learning disorder and "disruptive behavior disorder with aggressivity" (R. 830). He opined that Mr. Pickett was not capable of managing his financial resources, and that his prognosis and insight were limited (*Id.*). In January 2013, teacher, Ashley Holmes, completed a teacher questionnaire, noting that Mr. Pickett's reading comprehension, math skills and written language were all at the third grade level (R. 967). Ms. Holmes also noted that Mr. Pickett required oral and written instruction, and generally benefitted from having activities modeled for him (R. 968). Ms. Holmes did not identify any problems Mr. Pickett had with attending and completing tasks, interacting with others, or caring for himself (R. 969-71).

As part of his renewed claim for benefits after turning age 18, Mr. Pickett underwent a consultative medical exam in February 2013 with Jeffrey Karr, Ph.D. (R. 581). Dr. Karr assessed Mr. Pickett's IQ as 51, but noted that because Mr. Pickett displayed lethargy, low frustration tolerance and carelessness during the testing and subsequent interview, scores from that test should be considered invalid (R. 583). Dr. Karr diagnosed Mr. Pickett with oppositional defiance disorder and learning disorder, based on his history (R. 584). On March 4, 2013, M. DiFonso, Psy.D., completed a psychiatric review technique diagnosing Mr. Pickett with an "organic mental disorder"[5] as evidenced by his learning disorder and IQ scores in the borderline range (R.

---

[5] An organic mental disorder (now more often called a "neurocognitive disorder") is a term that describes decreased mental function due to a medical disease other than a psychiatric illness. https://medlineplus.gov/ency/article/001401.htm (visited on March 14, 2018).

614-15).[6] Dr. DiFonso opined that Mr. Pickett had mild restrictions in activities of daily living and social functioning, and moderate limitations in concentration, persistence, and pace (R. 624).

As part of his claim for benefits, Mr. Pickett was also examined by Michael Stone, Psy.D., in January 2014 (R. 636). Dr. Stone diagnosed Mr. Pickett with adjustment disorder with disturbance of mood secondary to learning disability (R. 639). He opined that Mr. Pickett was unable to manage benefits on his own behalf (*Id.*). Finally, Joseph Mehr, Ph.D., completed another psychiatric review technique in February 2014 (R. 649). Dr. Mehr also diagnosed Mr. Pickett with an organic mental disorder as well as an affective disorder, as evidenced by his learning disorder and IQ scores in the borderline range (*Id.*). Dr. Mehr opined that Mr. Pickett was mildly limited in daily activities and social functioning, and moderately limited in concentration, persistence and pace (R. 659). In the detailed breakdown of tasks associated with concentration, persistence and pace, Dr. Mehr noted that Mr. Pickett did not have significant limitations in seven out of eight categories, and had moderate limitations in one – the ability to carry out detailed instructions (R. 663).[7] The medical record does not reveal that Mr. Pickett received any mental health treatment (other than any he had possibly received at school pursuant to his behavioral plan).

## II.

Mr. Pickett argues that the ALJ did not obtain a valid waiver of his right to counsel, and subsequently failed to adequately develop the record in light of Mr. Pickett's lack of attorney. A claimant for benefits has a statutory right to be represented by counsel, *see* 42 U.S.C. § 406, but

---

[6] An IQ below 70 is generally considered to indicate an intellectual disability, as opposed to a learning disability. https://medlineplus.gov/ency/article/001523.htm (visited on March 12, 2018).

[7] These categories are: ability to carry out simple instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, ability to sustain an ordinary routine without special supervision, the ability to work in proximity to others without being distracted, the ability to make simple, work-related decisions, and the ability to complete a normal workday and workweek without interruption from psychological symptoms and to perform at a consistent pace (R. 663-64).

the right may be waived if the ALJ obtains a valid waiver. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). To obtain a valid waiver, an ALJ must explain to the claimant "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingent arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id., citing Thompson v. Sullivan*, 993 F.2d 581, 584 (7th Cir. 1991). If the ALJ fails to obtain a valid waiver of counsel, his duty to develop the record is heightened, and he must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Thompson*, 993 F.2d at 584. Further, if no valid waiver is obtained, the burden is then on the Commissioner to show that the ALJ adequately developed the record, and there is no presumption that the claimant has presented his or her best case before the ALJ. *Id.* at 842.

### A.

At the hearing, the ALJ explained to Mr. Pickett that he had the right to bring an attorney to the hearing, that an attorney could help him by getting information on his behalf, questioning witnesses, making arguments, and managing the administrative and scheduling issues related to his request for benefits (R. 1119-20). The ALJ also informed Mr. Pickett that an attorney cannot charge a fee unless the Agency approves the request (*Id.*). The ALJ did not explain that any fee was limited to 25 percent of past due benefits or that it was contingent on Mr. Pickett being awarded disability benefits. Claimant argues that these failures mean that Mr. Pickett did not adequately waive his right to counsel because he was not informed of all of the *Thompson* factors (Cl.'s Mem. at 8).

In response, defendant argues that the claimant was given adequate notice of his right to representation through the combination of the ALJ's explanation at the hearing along with

claimant's receipt of a document titled *Your Right to Representation* (R. 1064), which contained all of the information that *Thompson* said was required for a valid waiver (Def.'s Resp. at 6).[8] Defendant noted that the *Thompson* court and others after it have considered both verbal and written notice when deciding the waiver issue, and thus, it was appropriate to do so here (*Id., citing Skinner*, 478 F.3d at 841).

The court in *Thompson* had reviewed – and rejected as inadequate – a different pre-hearing notice than the *Your Right to Representation* document sent to Mr. Pickett. And while defendant contends that this new document constitutes adequate notice to claimant of his right to counsel, the Seventh Circuit has never ruled on the issue. Some district courts have held that the *Your Right to Representation* form, combined with a signed acknowledgement of the hearing, constitutes a valid waiver. *See, Moore v. Astrue,* 851 F.Supp.2d 1131 (N.D. Ill. 2012), *Lucas v. Colvin,* No. 1:15-cv-01870, 2016 WL 8671580 (S.D. Ind., June 17, 2016).

In this case, Mr. Pickett did not sign the acknowledgement of notice of hearing form (R. 1066). Moreover, given the evidence that Mr. Pickett has certain learning disabilities, the ALJ had a heightened duty to ensure that he understood the right he was waiving. *Thompson,* 933 F.2d at 586. The record shows an IQ test in 2011 that placed Mr. Pickett in the "borderline range," between a learning and an intellectual disability and an assessment of his reading ability at the third grade level. In these circumstances, we cannot accept the Commissioner's effort to fill the gaps in the ALJ's oral explanation by resorting to a document that we have no evidence Mr. Pickett could effectively read or understand.

---

[8] The *Your Right to Representation Form* is a two-page document that contains five sections: (1) What a representative can do; (2) Choosing a representative; (3) What your representative may charge you; (4) If someone else pays for your representative; (5) If you appeal to federal court (R. 1064-65). The section on what a representative may charge includes subsections on how to file a fee agreement or to file a fee petition, and how much claimant must pay a representative according to social security law (*Id.*).

Given the combination of Mr. Pickett's learning impairments and his failure to sign an acknowledgement of receipt of the pre-hearing documents, we decline to conclude that Mr. Pickett adequately waived his right to counsel. Therefore, we move to the issue of whether the inadequacy of the waiver is harmless because the ALJ nevertheless adequately developed the record.

## B.

Claimant argues that the ALJ failed to develop the record with respect to Mr. Pickett's learning disability, and by failing to adequately question the vocational expert ("VE") about the jobs she opined that Mr. Pickett could perform (Cl.'s Mem. at 9-10). As we noted above, an ALJ's duty to develop a full and fair record is heightened when a claimant appears *pro se;* then the ALJ must " 'scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.' " *Thompson,* 933 F.2d at 585–86 (quoting *Smith v. Sec. of Health, Educ. & Welfare,* 587 F.2d 857, 860 (7th Cir.1978)). Although pro se litigants must furnish some medical evidence to support their claim, *see Johnson v. Barnhart,* 449 F.3d 804, 808 (7th Cir. 2006), the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information. 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3).

That said, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994) And an omission is significant only if it is prejudicial. *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binio v, Shalala,* 13 F.3d 243, 246 (7th Cir. 1994). Instead a claimant must

set forth specific, relevant facts – such as medical evidence – that the ALJ did not consider. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

In this case, we conclude that the ALJ failed to fully develop the record with respect to Mr. Pickett's IQ. As described above, Mr. Pickett underwent several intelligence tests: (a) one in 2011, which assessed his IQ at 70, and (b) one in 2013, which assessed his IQ at 51 but which the tester judged invalid due to Mr. Pickett's demonstrated lethargy, frustration and carelessness. Other evaluations between 2011 and 2014 judged Mr. Pickett as not capable of managing funds and with a limited prognosis (Dr. Rudolph in 2012), having reading and math skills at the third grade level (teacher Ashley Holmes in 2013), having an organic mental disorder and borderline IQ (Dr. DiFonso in 2013 and Dr. Mehr in 2014), and having a learning disability and being unable to manage benefits on his behalf (Dr. Stone in 2014).[9] The ALJ summarizes some of these medical reports, focusing primarily on their positive aspects. For example, in summarizing Ms. Holmes' evaluation of Mr. Pickett, the ALJ mentions that Mr. Pickett was able to work independently and does not hesitate to ask for assistance, but did not mention the fact that he worked in all subjects at the third grade level (R. 1050). Significantly, the ALJ completely ignored the 2011 intelligence testing that assessed Mr. Pickett with an IQ of 70, which is in the low borderline range. Even assuming the ALJ was correct not to accept the 2013 IQ score of 51 because of its invalidity, he gives no reason for ignoring the earlier IQ score.

The ALJ's failure to develop the record with respect to Mr. Pickett's IQ score requires remand. While an individual with learning or intellectual disabilities may be able to work at

---

[9]We recognize (as did the ALJ) that these examinations and evaluations also found that some of Mr. Pickett's impairments were mild, and/or that he demonstrated the ability to answer questions, perform simple calculations, and participate fully in the examinations. We focus here on evidence that Mr. Pickett had a learning disability or more severe intellectual impairment because that evidence and the ALJ's treatment of it is relevant to the question of whether he adequately developed the record.

some jobs, the record lacks enough development of the issue of Mr. Pickett's IQ score and intellectual challenges to support the ALJ's RFC determination. Specifically, the ALJ's omission of any discussion of Mr. Pickett's 2011 IQ test and discounting of his 2013 IQ tests leaves a void in the record concerning Mr. Pickett's intellectual function. The omission of the 2011 score also eliminated the ALJ's ability to analyze whether the drop in Mr. Pickett's IQ from 2011 to 2013 was truly a function of his lethargy, frustration and carelessness in 2013, or instead a reflection of intellectual changes, behavioral issues or other challenges that would affect his ability to work. Had Mr. Pickett been represented by a lawyer at the hearing, he or she might have been able to flag the issue for the ALJ, request an updated IQ test, or ask for further investigation into Mr. Pickett's current intellectual capabilities and whether they matched the hypothetical the ALJ gave to the VE. By completely ignoring the existence of the earlier IQ test and similarly giving little attention to other evidence of Mr. Pickett's assessed intellectual deficiencies, the ALJ failed to amass sufficient evidence to support his RFC determination.

Mr. Pickett also argues that the ALJ failed to establish the reliability of the job statistics cited by the VE. In response to the ALJ's hypothetical, the VE testified that an individual with the limitations described (which tracked the RFC the ALJ found for Mr. Pickett) could perform work as a packer, DOT code 920.587-018, with approximately 3,000 positions in Illinois, a store laborer, DOT code 922.687-058, with 2,000 positions in Illinois, and as a dining room attendant, DOT code 311.677-018, with approximately 10,000 positions in Illinois (R. 1147). Next, the ALJ asked the VE if there were any jobs available to an individual who was unable to "persist eight hours or exertional and non-exertional activity regardless of the exertional capacities," and the VE said that such a limitation would eliminate all available jobs (R. 1148). The ALJ asked the VE if her testimony was consistent with the *Dictionary of Occupational Titles* and the VE

testified that it was (*Id.*). The ALJ did not ask the VE any other questions about her testimony, but gave Mr. Pickett the opportunity to offer the VE a hypothetical of his own or to ask her a question such as "how come I can't find such and so work in such and so field," but Mr. Pickett declined to do so (*Id.*).

Mr. Pickett contends that, to fulfill his duty to fully develop the record, the ALJ was required to question the VE further about the basis for her statistics (Cl.'s Mem. at 10). Claimant does not point to any specific inconsistencies or problems with the VE's testimony, but instead argues that, because the Seventh Circuit has recently criticized the accuracy of the DOT as a source of available jobs, *see, e.g., Hermann v. Colvin,* 772 F.3d 1110, 1113-4 (7th Cir. 2014), *Alaura v. Colvin,* 797 F.3d 501, 507 (7th Cir. 2015), the ALJ failed to develop the record with respect to jobs that were available to Mr. Pickett.

While the Seventh Circuit has recently been critical of the reliability of DOT statistics, *see Hermann, supra,* it has not ruled that an ALJ's reliance on them is *per se* grounds for remand. Instead, SSR 00-4p sets out two requirements that adjudicators must meet before they may rely on a VE's testimony in support of a disability determination. SSR 00-4p, 2000 WL 1898704 ("SSR 00-4p"), at *1. First, an ALJ has an "affirmative responsibility to ask about any possible conflicts between" a vocational expert's testimony and "the information provided in the DOT." SSR 00-4p, 2000 WL 1898704 ("SSR 00-4p"), at *4. An ALJ satisfies this duty if, like here, he asks the VE if his or her testimony has been consistent with the DOT. *Overman v. Astrue,* 546 F.3d 456, 463 (7th Cir. 2008). Second, if a VE's testimony "appears to conflict with the DOT," an ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00-4p at *4. In this case, the ALJ asked the VE if her testimony was consistent with the DOT and the

VE verified that it was. Therefore, we do not find that the VE failed to fully develop the record with respect to the number of jobs available in the local economy that Mr. Pickett can perform.

C.

Because we remand on the issue of the ALJ's failure to obtain adequate waiver and subsequent failure to develop the record, we need not reach claimant's other assignments of error. However, there is one additional issue from the hearing that might have been handled differently had Mr. Pickett had counsel, and which we flag for the ALJ on remand – the hypothetical to the VE (which became part of the RFC) that limited claimant to jobs in a "goal oriented environment." It is not clear to us what the ALJ meant by this limitation, or whether he intended it to account for Mr. Pickett's moderate limitations in concentration, persistence and pace. The assistance of an attorney at the hearing may have helped clarify the issue.

**CONCLUSION**

For the foregoing reasons, we grant claimant's motion for summary judgment (doc # 23) and deny the Commissioner's motion for summary judgment (doc. # 28). We remand the case for further proceedings consistent with this Memorandum Opinion and Order. The case is terminated.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: March 19, 2018**